IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DAVID RODRIGUEZ,

   Plaintiff,

v.                                             Case No. 3:20-cv-00282-DJN

HOPEWELL SCHOOL BOARD AND CITY
OF HOPEWELL, VIRGINIA,

   Defendants.

## BRIEF IN SUPPORT OF THE CITY OF HOPEWELL'S
## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

### I.    INTRODUCTION

David Rodriguez ("Rodriguez") filed a Complaint against the City of Hopewell ("Hopewell") alleging that he was subject to retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA") when former Hopewell police chief, John Keohane ("Keohane"), disclosed that Rodriguez had a disability to the School Board for the City of Hopewell ("School Board"). Hopewell moved to dismiss the Complaint. In response to Hopewell's Motion to Dismiss, Rodriguez filed an Amended Complaint alleging essentially the same operative facts. (ECF Doc. 11).

In the Amended Complaint, Rodriguez now sets out a stand-alone count for retaliation under the ADA against Hopewell in Count II and a count for the "unlawful disclosure of medical information" under the ADA in Count III. However, the Amended Complaint, like the original Complaint, does not allege facts sufficient to support either claim against Hopewell.

Specifically, Rodriguez has not alleged a sufficient causal connection between a protected activity and the alleged actions by Keohane. Furthermore, Rodriguez did not exhaust

1

his administrative remedies to bring an independent cause of action under the ADA for the unlawful disclosure of medical information. Even if he did exhaust his administrative remedies, Rodriguez has not alleged sufficient facts to state such a claim. Accordingly, the Amended Complaint should be dismissed.

## II. ALLEGATIONS

1. In 2006, Rodriguez alleges he was diagnosed with post-traumatic stress disorder after being discharged from the military. (ECF Doc. 11, ¶ 22).

2. Rodriguez was then hired as a patrol officer with Hopewell on January 8, 2007. (ECF Doc. 11, ¶ 10).

3. On October 13, 2013, Rodriguez was injured in the course of his duties in an automobile accident. (ECF Doc. 11, ¶¶ 11, 59). Due to the medication Rodriquez was taking for his injuries, his physician determined that he could not carry a weapon. As a result, Rodriguez was unable to carry out his duties as a police officer. (ECF Doc. 11, ¶¶ 11-12, 60).

4. Rodriguez alleges his supervisor, Michael Whittington ("Whittington"), made fun of his disability and called him "PTSD" immediately after the October 2013 car accident. (ECF Doc. 11, ¶¶ 65-66). Rodriguez filed a complaint in January 2014 against Whittington. (ECF Doc. 11, ¶ 67). Whittington admitted to calling Rodriguez PTSD on several occasions and the City issued Whittington a "counsel and assistance" pursuant to its discipline policy on January 24, 2014. (ECF Doc. 11, ¶¶ 68-69).

5. Eleven months after he complained about Whittington, Rodriguez retired from Hopewell on December 1, 2015, because he was permanently unable to carry a weapon and could not perform the essential functions of his job. (ECF Doc. 11, ¶¶ 15-20, 70).

6. Rodriguez submitted an application for disability retirement, which was approved on August 18, 2016. (ECF Doc. 11, ¶ 20, 71).[1]

7. After he retired, Rodriguez claims that Hopewell did not hire him as a part-time background investigator in 2016, and a part-time administrative assistant in 2017. (ECF Doc. 11, ¶¶ 73-79).

8. In late August of 2018, Keohane "revealed to the School Board that Rodriguez had a disability," after Rodriguez had applied for a security officer position with the City of Hopewell School Board. (ECF Doc. 11, ¶ 25). According to Rodriguez, Keohane told Michael Jones that "Rodriguez had a disability and that he had retired from Hopewell because of his disability." (ECF Doc. 11, ¶¶ 35-36, 86).

9. Ultimately, Rodriguez was not selected for the security position. (ECF Doc. 11, ¶ 28).

### III. ARGUMENT

**A. Standard of review.**

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is "to test the legal sufficiency of the complaint." *Randall v. U.S.,* 30 F.3d 518, 523 (4th Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is "plausible" when the plaintiff pleads facts sufficient to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Twombly,* 550 U.S. at 556.

---

[1] Paragraph 20, unlike paragraph 71, states that the application for disability retirement was approved in April of 2016, not August of 2016.

3

A court should grant a motion to dismiss, however, where the allegations are nothing more than legal conclusions, or where the allegations permit a court to infer no more than a possibility of misconduct. *See Iqbal,* 556 U.S. at 678–79. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *See Id.* at 678.

The Court need not accept legal conclusions that are presented as factual allegations, *Twombly*, 550 U.S. at 555, or "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557); *see also, Tobey v. Jones,* 706 F.3d 379 at 387–88 (4th Cir. 2013).

**B.  Rodriguez has not stated a claim for retaliation under the ADA in Count II of the Amended Complaint.**

    **1.  Rodriguez has not alleged all of the necessary elements to support a retaliation claim.**

To state a claim for retaliation under the ADA, Rodriguez must allege that: (1) he engaged in protected conduct; (2) an adverse action was taken against him by Hopewell; and (3) there was a causal connection between his protected conduct and the adverse action taken. *See Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012); *Ullrich v. CEXEC, Inc.*, 709 F. App'x 750, 753 (4th Cir. 2017).

While former employees may bring an action against a former employer for post-employment actions allegedly taken in retaliation for engaging in a protected activity, Rodriguez must still allege that he "engaged in protected activity" and that Hopewell took an adverse action "because of the protected activity." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 339, 117 S. Ct. 843, 845 (1997); *Bryant v. Aiken Regional Medical Centers, Inc.,* 333 F.3d 536, 543 (4th Cir. 2003).

In other words, Rodriguez must allege facts to show that his January 2014 complaint against Whittington was the "but for" cause of the adverse employment action – Keohane's alleged disclosure that Rodriguez had a disability. *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2534 (2013); *Reynolds*, 701 F.3d 143. Rodriguez has not done so.

### 2. Rodriguez has not alleged a causal connection between his 2014 complaint and the alleged retaliatory actions related to his application for employment with the School Board in 2018.

To survive a motion to dismiss, Rodriguez is required to plead causation. *Jones v. HCA*, 16 F. Supp. 3d 622, 634 (E.D. Va. 2014). Here, Rodriguez's Amended Complaint fall short.

Rodriguez grounds his retaliation claim on the allegation that he engaged in a protected activity in January of 2014, when he complained that Whittington referred to him as "PTSD" and created a hostile work environment. Then, over four years after Rodriguez complained about Whittington, and two and a half years after Rodriguez left his employment with Hopewell, Rodriguez alleges that Keohane retaliated against him after he applied for a job with the School Board.

While a plaintiff can rely on temporal proximity between the protected activity and the retaliatory conduct at the pleading stage, "a lengthy time lapse between the employer becoming

5

aware of the protected activity and the alleged adverse employment action … negates any inference that a causal connection exists between the two." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (holding three year lapse negates causal connection); *Causey v. Balog,* 162 F.3d 795, 803 (4th Cir. 1998) (finding an intervening time of thirteen months "too long to establish causation absent other evidence of retaliation"); *Shields v. Fed. Express Corp.*, 120 Fed.Appx. 956, 963 (4th Cir. 2005) (a gap of three to four months of temporal proximity has been held insufficient, standing alone, to establish causation). Accordingly, Rodriguez's allegations fall well-short of pleading a causal connection between his 2014 complaint about Whittington and Keohane's alleged 2018 disclosure that "Rodriguez had a disability."

With temporal proximity missing, Rodriguez is left with having to plead facts to support other evidence of retaliatory animus by Keohane because of the 2014 complaint. *See Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007). Again, Rodriguez's allegations fall short.

While Rodriguez alleges the conclusory assertion that "it was frowned upon for a police officer to complain about his or her superior," he does not allege facts to support this assertion. Indeed, the Amended Complaint is devoid of factual allegations to suggest that Rodriguez received negative treatment between the time of his complaint against Whittington and his retirement eleven months later.

Moreover, Rodriguez's assertion that he was not hired as a part-time background investigator in 2016 and a part-time administrative assistant in 2017, does not supply the necessary retaliatory animus to survive a motion to dismiss. The Amended Complaint does not allege facts that tie those decisions to Rodriguez's 2014 complaint about Whittington. In the absence of those facts, "only speculation can fill in the gaps in the complaint" to show that

6

Keohane was somehow motivated by retaliatory animus and that Rodriguez was actually subject to retaliation. *Lettieri*, 478 F.3d at 650.

This is particularly true where Rodriguez bases his retaliation claim on the allegation that Hopewell retaliated against him "by and through its Chief of Police John Keohane." (ECF Doc. 11, ¶¶ 25, 84-88). This conclusory theory is not supported by facts in the Amended Complaint. Instead, the Amended Complaint is devoid of facts that could support the assertion that Keohane maintained a retaliatory animus against Rodriguez.

The facts alleged show that Whittington was disciplined as a result of Rodriguez's 2014 complaint. (ECF Doc. 1, ¶ 59). Thereafter, the Amended Complaint is silent as to Keohane and his purported retaliatory animus for over four years. The allegation that Keohane "told Jones that Rodriguez had a disability," by itself, cannot supply the necessary causal support for a retaliation claim. Indeed, Rodriguez, himself, admits that he had a disability, could not perform the duties of a police officer because of his disability, and retired because of his disability. *See, Jones v. HCA*, 16 F. Supp. 3d 622, 635 (E.D. Va. 2014) (finding that plaintiff's conclusory allegation of retaliation was not supported by fact when plaintiff did not allege that emails criticizing productivity were false).

Moreover, Rodriguez's assertion that Keohane was aware of his disability cannot save his claim, because his disability status is not the "protected activity" on which Rodriguez bases his retaliation claim. In the end, Rodriguez must allege that Hopewell – through Keohane - was motivated by a desire to retaliate, and that Keohane did in fact retaliate against him for complaining about Whittington in 2014. *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 903 (4th Cir. 2017). Under the allegations in the Amended Complaint, this conclusion can only be reached through speculation. *Jones,* 16 F. Supp. 3d at 636 (allegations fail to "raise a right to

relief above a speculative level," the Court dismisses the ADA retaliation claim). Accordingly, Count II of the Amended Complaint against Hopewell should be dismissed.

**C.     Rodriguez does not have a cause of action for "unlawful disclosure of medical information" as plead in Count III.**

    **1.     Rodriguez did not exhaust his administrative remedies for this claim.**

It is well-settled that a plaintiff cannot file suit under the ADA unless he first "exhaust[s] his administrative remedies by filing a charge with the EEOC." *Dao v. Faustin*, 402 F. Supp. 3d 308, 333 (E.D. Va. 2019) (Dismissal is appropriate under Rule 12(b)(6), not 12(b)(1)). The "charge-filing requirement is a processing rule, albeit a mandatory one." *Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843, 1851, 204 L. Ed. 2d 116 (2019).

Here, Rodriguez did not exhaust his administrative remedies with respect to Count III. Instead, the Amended Charge of Discrimination filed by Rodriguez in the EEOC alleged that "the City of Hopewell Police Department *retaliated against me* by disclosing information about my disability." (Emphasis added; Exhibit 1).[2] Because Rodriguez only alleged a claim of retaliation against Hopewell, he cannot now assert a separate cause of action based on the "unlawful disclosure of medical evidence" under the ADA.

---

[2] The Charge of Discrimination may be considered by this Court without converting the motion to dismiss into a motion for summary judgment. "A court may consider [extrinsic evidence] in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 618 (E.D. Va. 2011) (considering charge of discrimination on motion to dismiss for failing to exhaust administrative remedies). Here, Rodriguez alleges he exhausted "all necessary procedural prerequisites" with the EEOC and filed suit within 90 days of receiving his right to sue letter from the EEOC. (ECF Doc. 11, ¶ 4). Accordingly, this document can properly be considered on this motion to dismiss. *See also, Davis v. George Mason Univ.,* 395 F. Supp. 2d 331, 335 (E.D. Va. 2005) (quoting *Gasner v. County Dinwiddie,* 162 F.R.D. 280, 282 (E.D. Va. 1995)) ("'when a plaintiff fails to introduce a pertinent document as part of his complaint' the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for Summary Judgment.'").

8

In opposing the original Motion to Dismiss, Rodriguez argued that the exhaustion requirement is violated only if a plaintiff's "administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit", citing *Sydnor v. Fairfax County, Va.*, 681 F.3d 591, 593 (4th Cir. 2012). (ECF Doc. 13, p. 5). He is mistaken.

The Fourth Circuit stated the controlling legal rule in *Chacko v. Patuxent Institution*, 429 F.3d 505, 509 (4th Cir. 2005):

> the factual allegations made in formal litigation must correspond to those set forth in the administrative charge. For example, the plaintiff's claim generally will be barred if his charge alleges discrimination on one basis – such as race – and he introduces another basis in formal litigation – such as sex…. A claim will also typically be barred if the administrative charge alleges one type of discrimination – such as discriminatory failure to promote – and the claim encompasses another type – such as discrimination in pay and benefits….

Those examples describe this case. Rodriguez's EEOC charge alleged discrimination only on the bases of retaliation under the ADA; but his Amended Complaint in this "formal litigation" introduced a new basis, "Unlawful Disclosure of Medical Information." Indeed, the differences between the alleged discrimination charged at the EEOC and the wrongful disclosure pled in the Amended Complaint are vastly greater than the differences between the types of discrimination in the examples given in *Chacko*. *See also*, *e.g.*, *Jones v. Calvert Group, Ltd.*, 551 F.3d 297 (4th Cir. 2009), *abrogated on other grounds by Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 204 L. Ed. 2d 116 (2019) (EEOC charge of retaliation, for filing a previous charge of discrimination based on age, sex, and race, did not exhaust a second claim of discrimination on the basis of age, sex, or race); *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132-33 (4th Cir. 2002) (EEOC charge alleging discrimination based on race did not exhaust claims of retaliation or discrimination based on plaintiff's color or sex); *Evans v. Technologies*

*Applications & Service Co.*, 80 F.3d 954 (4th Cir. 1996) (EEOC charge alleging sex discrimination did not exhaust claim of age discrimination); *Dennis v. County of Fairfax*, 55 F.3d 151, 153, 156 (4th Cir. 1995) (EEOC charge of disparate disciplinary treatment did not exhaust claim of discrimination in hiring, training, or promotion); *Lawson v. Burlington Industries, Inc.*, 683 F.2d 862 (4th Cir. 1982) (EEOC charge of illegal layoff did "not encompass an allegation of illegal failure to rehire"); *McIntyre-Handy v. APAC Customer Services, Inc.*, 422 F. Supp. 2d 611, 624-25 (E.D. Va. 2006), *superseded on other grounds*, *Galustian v. Peter,* 591 F.3d 724, 730 (4th Cir. 2010) (*see Produce Alliance, LLC v. Let-Us Produce, Inc.*, No. 2:10cv198, 2010 WL 7504802, at *2 n.2 (E.D. Va. Nov. 22, 2010) (EEOC charge that employer retaliated by harassing, disciplining, and terminating plaintiff for filing a disability discrimination suit did not exhaust a claim of disparate treatment based on disability; "[d]isparate treatment is simply a different type of discriminatory conduct than the conduct alleged in McIntyre-Handy's EEOC charge").

So too here, the alleged disclosure of medical information is "simply a different type of [prohibited] conduct" than the retaliation alleged in Rodriguez's EEOC Amended Charge with the EEOC. *Sydnor*, which addressed only a claim of failure to provide a reasonable accommodation, is not to the contrary. There, the plaintiff stated in her EEOC charge that she had requested a reasonable accommodation of her disability, and her intake questionnaire described the disability as "'limited walking ability … must use electric wheelchair if moving for any length of time.'" 681 F.3d at 592. She also stated that she had asked for "'lighter duty work.'" *Id.* The employer's argument was simply that the plaintiff "had 'never stated in her EEOC Charge that she would have been able to perform the essential job duties … in a wheelchair.'" *Id.* at 593. "The district court agreed that plaintiff did not 'file her proposed

accommodation with the EEOC' and dismissed the case *sua sponte* because of her 'failure to exhaust administrative remedies.'" *Id*.

The Fourth Circuit reversed, reasoning that "the goals of providing notice [to the employer] and an opportunity for an agency response"[3] were satisfied by the charge and the questionnaire. *Id*. "The touchstone for exhaustion," said the court, "is whether plaintiff's administrative and judicial claims are 'reasonably related' … not precisely the same, and there are sufficient similarities between the two to find this requirement satisfied here." *Id*. at 595 (citation omitted). It noted that "'a plaintiff fails to exhaust his administrative remedies where ... his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit,'" *id*. (quoting *Chacko*, 429 F.3d at 506), the passage quoted in Plaintiff's Memorandum; but it did not suggest in any way that that language is a comprehensive description of failures to exhaust, and of course it is not.

In *Sydnor*, unlike *Chacko*, *Bryant*, *Evans*, *Dennis*, *Lawson*, and *McIntyre-Handy* – and unlike this case – the plaintiff's "administrative and judicial claims … focused on the same type of discrimination" (failure to provide a reasonable accommodation), and therefore the defendant was on notice of the nature of the charge "from the beginning." *Id*. "[T]he type of prohibited action alleged – discrimination on the basis of disability by failing to provide a reasonable accommodation – remained consistent throughout." *Id.*

That is not true here. Rodriguez's EEOC charge expressly and specifically alleged *only* that "the City of Hopewell Police Department *retaliated* against me by disclosing information

---

[3] *See Chacko*, 429 F.3d at 510: "This notice gives the employer an initial opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions…. It also prevents the employer from later complaining of prejudice, since it has known of the allegations from the very beginning. [¶] Second, the exhaustion requirement initiates agency-monitored settlement, the primary way that claims of discrimination are resolved."

11

about my disability to a prospective employer." (Emphasis added.) *Nothing* in the EEOC Amended Charge provided notice that Rodriguez was claiming that Hopewell separately violated his ADA rights by disclosing such information. As a result, Rodriguez did not exhaust his administrative remedies and Count III should be dismissed.

    **2. Even if he did exhaust his administrative remedies, Rodriguez has not alleged a violation of the ADA.**

        **a. There is no private right of action for violation of the ADA's non-disclosure requirement.**

Count III also does not state a claim on which relief can be granted because the ADA does not create a private right of action for violation of its non-disclosure requirement (42 U.S.C. § 12112(d)(3)(B)), either expressly or by implication.

The ADA does not create an express private right of action for violation of the non-disclosure requirement. The only question, therefore, is whether it does so by implication. It does not. "The fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979).

> [W]hen deciding whether to recognize an implied cause of action, the "determinative" question is one of statutory intent…. If the statute itself does not "displa[y] an intent" to create "a private remedy," then "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." … [T]he judicial task [is] instead "limited solely to determining whether Congress intended to create the private right of action asserted."

*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855-56 (2017) (citations omitted).

That rule is well established in Supreme Court case law as well as decisions of both the Fourth Circuit and this Court. In *Clear Sky Car Wash, LLC v. City of Chesapeake*, 910 F. Supp. 2d 861 (E.D. Va. 2012), for example, this Court held that "it is a function of the court," as a matter of statutory construction, "'to interpret the statute Congress has passed to determine

whether it displays an intent to create not just a private right but also a private remedy.'" *Id*. at 875 (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979)).

"[W[hen Congress wished to provide a private damage remedy, it knew how to do so and did so expressly." *Touche Ross*, 442 U.S. at 572. In that case, the Court pointed to the private rights of action created by §§ 9(a), 16(b), and 18(a) of the Securities Act of 1934, in support of its holding that § 17(a) of that statute does not create a private right of action by implication. *See also*, *e.g.*, *Sandoz Inc. v. Amgen Inc.*, 137 S. Ct. 1664, 1675 (2017) ("We assume that Congress acted intentionally when it provided an injunctive remedy for breach of the confidentiality requirements but not for breach of § 262(*l*)(2)(A)'s disclosure requirement."); *Trejo v. Ryman Hospitality Props., Inc.*, 795 F.3d 442, 450 (4th Cir. 2015) (Harris, J., concurring in the judgment) (quoting *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 15 (1981)) ("Absent 'strong indicia of a contrary congressional intent,' we are to presume that Congress 'provided precisely the remedies it considered appropriate,'… and to refrain from inferring others."). In short, "[i]t is … an 'elemental canon' of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies." *Karahalios v. National Federation of Federal Employees, Local 1263*, 489 U.S. 527, 533 (1989) (quoting *Transamerica Mortgage Advisors*, 444 U.S. at 19).

That "elemental canon" applies here. In Section 202 of the ADA, 42 U.S.C. § 12132, Congress provided that "no qualified individual with a disability shall, by reason of such disability … be subjected to discrimination" by any "public entity." In Section 203, 42 U.S.C. § 12133, it created an express private right of action in favor of "any person alleging discrimination on the basis of disability in violation of section 12132 of this title." Congress did *not*, however, create a right of action in favor of a person, such as Rodriguez, who alleges that a

13

defendant has "violated the ADA by disclosing [his] medical information and status as an individual with a disability …." (ECF Doc. 11, ¶ 105). This Court should "presume that Congress 'provided precisely the remedies it considered appropriate,'… and … refrain from inferring others." *Trejo*, 795 F.3d at 450 (quoting *Middlesex County*, 453 U.S. at 15).

### b. The allegations do not establish a claim for unlawful disclosure of medical information.

Even if a private cause of action existed, the factual allegations in the Amended Complaint do not establish a violation of the ADA. In conclusory fashion, Rodriguez alleges that "Hopewell violated the ADA by disclosing Rodriguez's medical information and status as an individual with a disability to the School Board." (ECF Doc. 11, ¶ 105). Yet, the Amended Complaint actually only alleges that "Keohane told Jones that Rodriguez had a disability" and that "he retired from Hopewell because of his disability." (ECF Doc. 11, ¶¶ 36, 86).

This does not violate the ADA's confidentiality provisions. The Amended Complaint does not allege that Keohane disclosed Rodriguez's medical condition or medical history. Indeed, there is no allegation that Keohane told the School Board that Rodriguez had PTSD, a back injury, took medication, or that he could not carry a weapon. The Amended Complaint is devoid of facts to show that Keohane revealed a medical condition or history that was sought though a medical examination or inquiry, or as part of an employee health program as required under the ADA.[4]

---

[4] 42 U.S.C. § 12112(d)(4)(B) and (C) provide in pertinent part that an employer may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to at that work site and may make inquiries into the ability of an employee to perform job-related functions. The information obtained regarding the medical condition or history of any employee is subject to the confidentiality requirements of subparagraphs (B) and (C) of paragraph (3). *Wiggins v. DaVita Tidewater, LLC*, 451 F. Supp. 2d 789, 801–02 (E.D. Va. 2006).

Additionally, the Amended Complaint alleges that Rodriguez filed an application for "disability retirement", which was approved. Under the circumstances, the alleged disclosure that Rodriguez "had a disability," or that he retired "because of his disability", is not a violation of the ADA as that information was obtained and available outside of the parameters defined under the ADA. *See Wiggins v. DaVita Tidewater, LLC*, 451 F. Supp. 2d 789, 801–02 (E.D. Va. 2006) (holding that disclosure that plaintiff was diagnosed with bipolar disorder did not violate ADA, as information did not come from an employee health program or employer-mandated medical examination, but from a private physician); *Montano v. INOVA Health Care Servs.*, No. CIV.A.1:08CV565, 2008 WL 4905982, at *7 (E.D. Va. Nov. 12, 2008) (holding accusation of wrongful disclosure was based wholly on speculation and that to invoke the ADA, the confidential medical information must be obtained through an entrance exam or a disability-related inquiry, and that the statute does not apply to information that employees voluntarily disclose); *EEOC v. Overnite Transp. Co.,* No. 7:01CV00076, 2001 WL 1521584, *2 (W.D. Va. Nov. 30, 2001). In the end, Rodriguez's claim is supported only by mere speculation and conclusions.

### III.     CONCLUSION

For the reasons stated, the City of Hopewell respectfully requests that the Court grant the Motion to Dismiss and dismiss the Amended Complaint against the City of Hopewell with prejudice.

**CITY OF HOPEWELL, VIRGINIA**

By Counsel

/s/
Jeremy D. Capps (VSB No. 43909)
Counsel for City of Hopewell, Virginia
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
jcapps@hccw.com

## **C E R T I F I C A T E**

      I hereby certify that on the 9th day of June, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

      Tim Schulte, Esq. (VSB No. 41881)
      Blackwell N. Shelley, Jr., Esq. (VSB No. 28142)
      Shelley Cupp Schulte, P.C.
      2020 Monument Avenue
      Richmond, VA 23220
      804-644-9700 - Phone
      804-278-9634 - Fax
      shelley@scs.law
      shelley@scs-work.com

      Stacy Haney, Esq. (VSB No. 71054)
      Haney Phinyowattanachip PLLC
      11 S. 12th Street
      Suite 300 C
      Richmond, VA 23219
      804-500-0301 - Phone
      804-500-0309 - Fax
      shaney@haneyphinyo.com

      Andrew P. Selman, Esq. (VSB No. 91060)
      Haney Phinyowattanachip PLLC
      11 S. 12th Street
      Suite 300 C
      Richmond, VA 23219
      804-500-0303 - Phone
      804-500-0309 - Fax
      aselman@haneyphinyo.com

/s/
Jeremy D. Capps (VSB No. 43909)
Counsel for City of Hopewell, Virginia
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
jcapps@hccw.com