# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| DAVID RODRIGUEZ, | ) |
| *Plaintiff,* | ) |
| v. | ) |
| HOPEWELL SCHOOL BOARD, | ) Civil Action No.:   3:20-cv-282 |
| and | ) |
| CITY OF HOPEWELL, | ) |
| *Defendants.* | ) |

## MEMORANDUM IN OPPOSITION TO
## CITY OF HOPEWELL'S SECOND MOTION TO DISMISS

This case is about post-employment retaliation by the City of Hopewell that went on for several years. Plaintiff David Rodriguez is disabled, suffering from post-traumatic stress disorder and chronic backpain. First Amended Complaint ("FAC") at ¶ 6. He was employed with Defendant City of Hopewell ("Hopewell") as a police officer for almost nine years when he took disability retirement in December of 2015. *Id*. at ¶ 10.

In October of 2013, Rodriguez was injured, resulting in permanent disabilities. *Id*. at ¶ 11. When his Captain made fun of his disabilities, Rodriguez filed a complaint. *Id*. at ¶ 67. The Captain admitted the unbecoming conduct and was counseled. *Id*. at ¶ 69. Over the next several years, Hopewell retaliated against Plaintiff in a variety of ways. *Id*. at ¶¶ 72-80, 89-95. Hopewell did not hire him as a background

1

investigator in a part-time position when it had done so for other retired police officers even though he was qualified for such a position. *Id*. at ¶¶ 73, 75. Hopewell also did not hire him as a part-time position as administrative assistant even though he was qualified for such a position and did apply. *Id*. at ¶¶ 76-80. Since his retirement in December of 2015, Hopewell has excluded Rodriguez from communications, meetings and social gatherings with its retired police officers, including a retirement party in 2019. *Id*. at ¶¶ 89-95.

In August of 2018, John Keohane, in one of his final acts as Hopewell's Chief of Police, sabotaged Plaintiff's efforts to get a part-time job with Hopewell School Board (hereinafter "the Board") as a school security officer, by revealing to the Board that Plaintiff was disabled. *Id*. at ¶ 36. Keohane had learned about Rodriguez's medical condition and disability when Rodriguez requested reasonable accommodations and later applied for and received disability retirement. FAC ¶¶ 11-19, 106. Upon learning of Rodriguez's disability status, the School Board refused to hire him. *Id*. at ¶ 52. Plaintiff, by counsel, pursuant to Rules 12 (b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure and Local Rule 7(F), and for the reasons set forth herein, respectfully requests that this Court Overrule the City of Hopewell's Motion to Dismiss Counts Two and Three of the First Amended Complaint. (ECF Nos. 17 & 18).

## ANALYSIS

Under Rule 12(b)(6), a complaint should not be dismissed "unless it appears certain that [plaintiff] can prove no set of facts that would support his claim and

would entitle him to relief." *Smith v. Sydnor*, 184 F.3d 356, 361 (4th Cir. 1999). The Court must accept all of the complaint's well-pleaded allegations and view them in a light most favorable to the plaintiff. *Id*. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).

Accordingly, the Supreme Court has held that to satisfy the pleading requirements of Rule 8(a), a complaint must include a plausible statement of the claim showing that the pleader is entitled to relief and providing the defendant with fair notice of "what … the claim is and the ground upon which it rests." *Id*.

However, as the Fourth Circuit explained in *Woods v. City of Greensboro*, 855 F.3d 639 (4th Cir. 2017), the holdings of *Twombly* and *Iqbal* come with a *caveat*:

> In reaching our conclusion, we note that discrimination claims are particularly vulnerable to premature dismissal because civil rights plaintiffs often plead facts that are consistent with both legal and illegal behavior, and civil rights cases are more likely to suffer from information-asymmetry, pre-discovery. There is thus a real risk that legitimate discrimination claims, particularly claims based on more subtle theories of stereotyping or implicit bias, will be dismissed should a judge substitute his or her view of the likely reason for a particular action in place of the controlling plausibility standard. Such an approach especially treads through doctrinal quicksand when it is undertaken without the benefit of a developed record, one

> essential to the substantiation or refutation of common sense allegations of invidious discrimination.

*Id.* at 652. (Citations omitted).

Defendant Hopewell is inviting the Court to tread through such doctrinal quicksand. Its motion must be denied because it is unfounded.

## I. Hopewell's Motion Must Be Denied Because Rodriguez Has Stated a Claim for Retaliation.

Hopewell filed a first Motion to Dismiss on May 19, 2020. (ECF No. 9 & 10). That motion was denied as moot when Rodriguez filed his First Amended Complaint. Hopewell now has filed a Motion to Dismiss the First Amended Complaint. (ECF Nos. 17, 18). It claims Rodriguez has failed to assert causation between his protected activity and Hopewell's adverse action because of the protected activity. Def. Mem. (ECF No. 18) at 5.

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in a protected activity; (2) his employer acted adversely against him; and (3) his protected activity was causally connected to his employer's adverse action. *Bover-Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015) (*en banc*); *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997). Hopewell concedes the presence of the first two elements.

"Little is required to plead causation." *Jones v. HCA* (Hosp. Corp. of Am.), 16 F. Supp. 3d 622, 634 (E.D. Va. 2014 (Payne, J.). In retaliation cases, causation is established by either close temporal proximity or evidence of recurring retaliatory animus between the protected activity and the adverse employment action. *Lettieri*

4

*v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007). Further, "[i]f a plaintiff can show that she was fired under suspicious circumstances and that her employer lied about its reasons for firing her, the factfinder may infer that the employer's undisclosed retaliatory animus was the actual cause of her termination." *Foster v. Univ. of Maryland-Eastern* Shore, 787 F.3d 243, 250 (4th Cir. 2015) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000)).

Generally, "a lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action … negates any inference that a causal connection exists between the two." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). However, this holding applies most forcefully in wrongful termination cases; it is less applicable in failure-to-promote cases. *Mandell v. County of Suffolk & John Gallagher*, 316 F.3d 368 (2nd Cir. 2003) (vacating summary judgment in First Amendment retaliation case where denial of promotion occurred ten years after plaintiff's protected speech); *Gee v. Principi*, 289 F.3d 342 (5th Cir. 2003) (vacating summary judgment in Title VII retaliation case where plaintiff was denied a promotion two years after making sexual harassment claim).

Hopewell cites three wrongful termination cases[1] as support of its argument that too much time elapsed between Rodriguez's January 2014 complaint about harassment and Chief Keohane's successful sabotage of Rodriguez's job application

---

[1] *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653 (4th Cir. 1998); *Causey v. Balog,* 162 F.3d 795 (4th Cir. 1998); *Shields v. Fed. Express Corp.*, 120 Fed.Appx. 956 (4th Cir. 2005).

with the Board in August of 2018. Def. Mem. at 6. Hopewell concedes that "temporal proximity" is not the only vehicle to plead causation; Rodriguez may simply "plead facts to support other evidence of retaliatory animus by Keohane…" *Id.* Hopewell does not, however, recognize Rodriguez's allegations as facts supporting other evidence of retaliatory animus. *Id.* ("Rodriguez's allegations fall short.")

Hopewell is wrong. "It makes logical sense that if an employer wishes to retaliate by firing an employee, he is likely to do so soon after the event. In a failure to promote case, however, the opportunities for retaliation do not necessarily immediately present themselves." *Mandell*, 316 F.3d at 384. The time lapse between the protected conduct and the retaliatory employment action is only one part of the Court's analysis; it is "not in itself conclusive of [the] determinations of retaliation." *Principi*, 289 F.3d at 347 n. 3 (*citing Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992) (affirming finding of retaliation despite passage of fourteen months between protected activity and adverse action)). In *Shirley*, the employer argued that the lapse of fourteen months was irrefutable evidence that there was no causation between the employee's filing a charge with the EEOC and her subsequent termination. The court disagreed. ("The district court properly weighed the lapse of time **as one of the elements** in the entire calculation of whether Shirley had shown a causal connection between the protected activity and the subsequent firing.") *Id.* at 44. (Emphasis added). Moreover, like the plaintiff in *Principi*, Rodriguez "experienced continuing problems with [the employer] even before the final adverse employment action occurred." *Principi*, 289 F.3d at 347 n. 3.

6

In its memorandum, Defendant Hopewell ignores its multiple "recurring retaliatory acts in the intervening period [that] make causation plausible." *Burke v. CHS Middle East*, 2019 U.S. Dist. LEXIS 19189 at *10 (E.D. Va. Feb. 4, 2019). What were these continuing problems and recurring retaliatory acts? Rodriguez has alleged that Hopewell, before it sabotaged his job interview with the School Board, on two separate occasions failed to hire him for part-time positions that it routinely fills with recently retired police officers. Hopewell refused to hire him in January of 2016 (30 days after the end of his employment) as a part-time background investigator when it had offered similar jobs to other police officers who were forced to retire due to health issues, even though Rodriguez was qualified for the position. *Id.* at ¶¶ 73-75. Hopewell again did not hire him in 2017, as a part-time administrative assistant, even though he was qualified for the position and applied. *Id.* at ¶¶ 76-80. Since his retirement in December of 2015, Hopewell has also excluded Rodriguez from all communications, meetings and social gatherings with its retired police officers, including a retirement party in 2019. *Id.* at ¶¶ 89-95. In short, Rodriguez has alleged that Hopewell retaliated as soon as "the opportunities for retaliation … present[ed] themselves." *Mandell*, 316 F.3d at 384.

Causation can further be established when the person conducting the final review serves as the 'cat's paw' of those who were acting from retaliatory motives, *see Principi*, 289 F.3d at 346, even where the earlier complaint by the plaintiff had occurred more than two years before. *Id.* at 344. ("Gee continued to work for two years after the incident…"); *Philips v. Loudon Cty. Public Schs.*, 2020 U.S. Dist. LEXIS

7

80369 at *17. ("Discriminatory intent may be imputed to a decision-maker when discriminatory bias infects the decision-making process.")

Finally, and most importantly, Police Chief Keohane's interaction with Jones was unlawful. Hopewell did not engage in conduct that was on its face lawful, such as a termination, albeit for unlawful purposes. Instead, Keohane disclosed Rodriguez's status as a disabled person. FAC ¶ 91. This was unlawful *per se*. 42 U.S.C. § 12112(d). As a result of Keohane's unlawful conduct Rodriguez did not get the job. FAC ¶ 52.

Hopewell's motion simply ignores this evidence. *See* Def. Mem. at 7 ("the Amended Complaint is silent as to Keohane and his purported retaliatory animus for over four years"). The motion must be denied.

## II. Hopewell's Motion as to Count III Must Be Denied Because Rodriguez Has Stated a Claim for Unlawful Disclosure of Medical Information.

### 1. Rodriguez has exhausted his administrative remedies.

Next, Hopewell argues that Rodriguez cannot prevail on his claim for unlawful disclosure of medical information because he failed to include this claim in his EEOC charge. Def. Mem. at 7. His charge, attached to Hopewell's memorandum as Exhibit 1 (ECF No. 18-1), states in relevant parts,

> My employment as a police officer ended because I was injured during a car accident, while working and suffered a back injury. Due to the injury to my back, I was required to take pain medication and therefore, was unable to carry a weapon. … During the second interview Mr. Jones … asked me "what about your disability?" Mr. Jones … stated "I spoke to John." … Chief John Keohane. … **I believe that … the City of Hopewell Police Department retaliated**

8

> **against me by disclosing information about my disability to a prospective employer…**

*Id.* at 1-2. (Emphasis added).

But Hopewell ignores this language, arguing instead, "Because Rodriguez only alleged a claim of retaliation … he cannot now assert a separate cause of action [for] unlawful disclosure of medical evidence…" Def. Mem. at 8. This argument is inconsistent with the law in this Circuit. "[T]he scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." *Sydnor v. Fairfax County, Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (quoting *Jones v. Calvert Grp., Ltd.*, 661 F.3d 297, 300 (4th Cir. 2009)). "Thus, a plaintiff fails to exhaust his administrative remedies where his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Sydnor*, 681 F.3d at 593 (quoting *Chacko. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005)).

> At the same time, however, the exhaustion requirement should not become a tripwire for hapless plaintiffs. … Accordingly, an administrative charge of discrimination does not strictly limit a Title VII suit which may follow. Instead, so long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit.

*Sydnor*, 681 F.3d at 594 (citations and quotations omitted).

"The touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same…" *Id.* at 595. Rodriguez included in his EEOC charge the allegation that Keohane disclosed to the

9

School Board that Rodriguez had had to retire due to his disability. These allegations contain allegations of unlawful disclosure of medical evidence. Hopewell's motion is baseless.

Undeterred by the allegations in the EEOC charge and the holding of *Sydnor*, Hopewell insists that the holding of *Chacko v. Patuxent Institution*, 429 F.3d 505 (4th Cir. 2005) bars Rodriguez's claim. Def. Mem. at 9. In *Chacko*, the Court held, "the factual allegations made in formal litigation must correspond to those set forth in the administrative charge." *Id.* at 509. The Court continues that allegations of race discrimination made in the plaintiff's charge could not form the basis of a claim of sex discrimination. *Id.* But Rodriguez has not alleged facts in his Amended Complaint different from what he alleged in his EEOC charge. His charge reads, in part, "I believe that … the City of Hopewell Police Department retaliated against me by disclosing information about my disability to a prospective employer in violation of the Americans with Disabilities Act…" Def. Ex. 1 at p. 2. (ECF No. 18-1). This corresponds directly with his allegations in his Amended Complaint, "Hopewell violated the ADA by disclosing Rodriguez's medical information and status as an individual with a disability to the School Board." FAC ¶ 105. His charge contains exactly the same "time frames, actors, and discriminatory conduct [as] the central factual allegations in his formal suit." *Sydnor*, 681 F.3d at 593 (quoting *Chacko. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005)).

Hopewell then cites a string of cases purportedly supporting its position, without providing even a hint of an analysis. Def. Mem. at 9-10. *Jones v. Calvert Grp.,*

*Ltd.*, 551 F.3d 297 (4th Cir. 2009)[2], involved a plaintiff whose first EEOC charge of race, age and sex discrimination was resolved by written agreement. 551 F.3d at 299. She then filed a second charge alleging only retaliation and, after receiving a right-to-sue letter on the second charge only, filed suit. *Id.* The Court held that she had failed to exhaust her administrative remedies as to the race, age and sex discrimination claims because her second charge did not mention these claims. *Id.* at 301. *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124 (4th Cir. 2002) involved a charge of race discrimination. The Court dismissed allegations of "retaliation, and color and sex discrimination, however, [because they] could not reasonably be expected to occur in light of Bryant's sole charge of race discrimination, and the investigation of the complaint did not touch on any matters other than race discrimination." *Id.* at 133. The plaintiff in *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954 (4th Cir. 1996), alleged only sex discrimination in her charge. *Id.* at 963. The Court dismissed her claims of sexual harassment and discrimination in pay and benefits. *Id.* The plaintiff in *Dennis v. County of Fairfax*, 55 F.3d 151 (4th Cir. 1995), alleged "disparate disciplinary treatment" in his charge. *Id.* at 153. The Court dismissed his claims for discrimination in hiring, promotion, and training. *Id.* at 156. The plaintiff in *Lawson v. Burlington Industries, Inc.*, 683 F.2d 862 (4th Cir. 1982), filed his charge late. The Court dismissed his ADEA claim.

---

[2] *Abrogated on other grounds by Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843 (2019).

11

In all these cases, the Court stressed that "discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint," are appropriate claims before the Court. *See e.g. Evans*, 80 F.3d at 963. Unlike the unlucky plaintiffs in *Jones, Bryant, Evans,* and *Dennis*, Rodriguez did mention the unlawful disclosure of medical information by Keohane in his charge. His Count III is not "simply a different type of prohibited conduct than the [conduct] alleged in Rodriguez's EEOC Amended Charge," as argued in Defendant's Motion. Def. Mem. at 10. Defendant's motion on this point is frivolous and must be denied.

### 2. The ADA provides for a claim for unlawful disclosure of medical information.

Next, without citing to a single ADA case, Hopewell claims there is no right of action for the violation of 42 U.S.C. § 12112(d)(3)(B). Def. Mem. at 12-14. To be sure, Hopewell cites a number of opinions that hold that there is no remedy for a violation of § 17 (a) of the Securities Exchange Act of 1934 (*Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)); or for damages under *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971) (*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855-56 (2017)); there is also apparently no private cause of action under the Uniform Relocation Assistance and Real Property Acquisitions Policies for Federal and Federally Assisted Programs Act (*Clear Sky Car Wash, LLC v. City of Chesapeake*, 910 F. Supp. 2d 861 (E.D. Va. 2012)); and so on *ad infinitum*.

What Hopewell does not cite, is the multitude of courts holding that there is such a cause of action for the violation of 42 U.S.C. § 12112(d)(3)(B). *See e.g. Hannah*

*P. v. Coats*, 916 F.3d 327, 338 fn. 4 (4th Cir. 2019)[3] ("Subject to certain exceptions, an employer 'shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability.'") (Citing 42 U.S.C. § 12112(d)(2)(A)); *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 155 (4th Cir. 2012) (analyzing claim of "disclosing … medical condition to unauthorized individuals") (citations omitted); *Wiggins v. DaVita Tidewater, LLC*, 451 F. Supp. 2d 789, 801–02 (E.D. Va. 2006)[4]; *Heston v. Underwriters Labs., Inc.*, 297 F. Supp. 2d 840, 845 (M.D.N.C. 2003) ("The obvious purpose of subsection (d) is to limit the gathering and use of medical information as one of the ways to reduce the possibility of discrimination."); *EEOC v. Overnite Transp. Co.*, 2001 U.S. Dist. LEXIS 20535, *2 (W.D. Va. Nov. 30, 2001).

The Court in *Hannah P.* also cites to courts outside the Fourth Circuit that recognize such a cause of action: *Hannah P.*, 916 F.3d at 340-41 (citing *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1216 (11th Cir. 2010) (concluding that whether an inquiry following a failed drug test was likely to elicit information about a disability in violation of the ADA presented a question of fact for a jury to resolve); *Fleming v. State Univ. of N.Y.*, 502 F. Supp. 2d 324, 338 (E.D.N.Y. 2007) (concluding the plaintiff pled facts sufficient to state a claim for failure to

---

[3] The Court in *Hannah P.* analyzed a claim under the Rehabilitation Act, not the ADA, but stated, "To the extent possible, we construe the ADA and *Rehabilitation Act* to impose similar requirements." (citing *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012)).

[4] Hopewell is familiar with *Wiggins* where the Court recognized such a cause of action, but relegates the opinion to a footnote. Def. Mem. at 14 n. 4.

13

confidentially maintain medical information under the ADA where the plaintiff alleged that his disclosure of his sickle cell anemia was not voluntary because his supervisor called him while he was in the hospital and asked him why he was there)). *See also Harris v. Cochise County*, 2009 U.S. Dist. LEXIS 135275 at *33 (D. Ariz, Sep. 30, 2009); *Doe v. United States Postal Service*, 317 F.3d 339, 344 (D.C. Cir. 2003).

Hopewell's motion is unfounded and must be denied.

### 3. Rodriguez has stated a claim for unlawful disclosure of medical information.

Finally, Hopewell asserts that Rodriguez cannot prevail on his medical disclosure claim because Keohane did not disclose medical information sought through a medical examination or inquiry, or as part of an employee health program. Def. Mem. at 14-15. Hopewell is mistaken. Keohane learned about Rodriguez's medical condition and disability when Rodriguez requested reasonable accommodations and later applied for and received disability retirement. FAC ¶¶ 11-19, 106.

On September 10, 2015, Chief Keohane sent a letter to Rodriguez, explaining that Rodriguez's physician had stated his medical opinion that Rodriguez could no longer carry a weapon. "Nonetheless, the City has made every effort to accommodate you and allow you a reasonable amount of time to recuperate and return to full-time, full position duty of Police Officer. … you are unable to perform an essential function of the Police Officer position, with or without a reasonable accommodation." *Id*. at ¶¶ 17, 19.

Hopewell's current legal position is inconsistent with the record and contrary to its prior admissions: it had received the medical information of Rodriguez's disability "through a medical examination or inquiry, or as part of an employee health program." When Keohane disclosed this information to the Board, he violated the ADA. *Harris v. Cochise County*, 2009 U.S. Dist. LEXIS 135275 at *33 (D. Ariz, Sep. 30, 2009); *Doe v. United States Postal Service*, 317 F.3d 339, 344 (D.C. Cir. 2003). Rodriguez has pleaded a medical disclosure claim under the ADA. Defendant Hopewell's motion must be denied.

## CONCLUSION

Defendant Hopewell's Motion to Dismiss is unfounded and should be denied.

DAVID RODRIGUEZ

By Counsel

\_\_\_\_\_/s/ Tim Schulte_____
Tim Schulte (VSB #41881)
Blackwell N. Shelley, Jr. (VSB #28142)
Shelley Cupp Schulte, P.C.
2020 Monument Avenue
Richmond VA 23220
804.644.9700
804.278.9634 [fax]
schulte@scs.law
shelley@scs.law

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of June 2020, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Stacy Haney (VSB No. 71054)
Andrew P. Selman (VSB No. 91060)
Haney Phinyowattanachip PLLC
11 S. 12th Street
Suite 300 C
Richmond, Virginia 23219
804.500.0301
804. 500.0309 [fax]
shaney@haneyphinyo.com
aselman@haneyphinyo.com

*Counsel for Defendant Hopewell School Board*

Jeremy D. Capps (VSB No. 43909)
Harman, Claytor, Covington & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804.747.5200
804.747.6085 [fax]
jcapps@hccw.com

*Counsel for Defendant City of Hopewell*

/s/ Tim Schulte
Tim Schulte (VSB #41881)
Shelley Cupp Schulte, P.C.
2020 Monument Avenue
Richmond VA 23220
804.644.9700
804.278.9634 [fax]
schulte@scs.law